UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| BRANDON CARRIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 2:23-CV-80-KAC-CRW |
| | ) | |
| MATT PATTERSON, Captain of Carter County Jail, | ) ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, an inmate proceeding pro se, filed (1) a motion for leave to proceed *in forma pauperis* [Doc. 1], and a pro se Complaint under 42 U.S.C. § 1983 and potentially state law [Doc. 2]. For the reasons set forth below, the Court (1) **GRANTS** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] and (2) **DISMISSES** the Complaint for failure to state a claim upon which relief may be granted.

I. **MOTION TO PROCEED *IN FORMA PAUPERIS***

Under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee. See 28 U.S.C. § 1915(a). It appears from Plaintiff's motion for leave to proceed in forma pauperis [Doc. 1] and certified inmate trust account record that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, under 28 U.S.C. § 1915, the Court **GRANTS** the Motion [Doc. 1].

Plaintiff is **ASSESSED** the civil filing fee of three hundred fifty dollars ($350.00). The custodian of Plaintiff's inmate trust account **SHALL** submit to the Clerk, U.S. District Court, 220 West Depot Street, Suite 200, Greeneville, Tennessee 37743, as an initial partial payment, whichever is the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's

inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account **SHALL** submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this procedure, the Court **DIRECTS** the Clerk to provide a copy of this Memorandum and Order to both the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This Memorandum and Order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution.

## II. COMPLAINT SCREENING

### A. Screening Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA,

a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery are not well-pled and do not state a plausible claim. *Twombly*, 550 U.S. at 555, 570. Further, formulaic and conclusory recitations of the elements of a claim that are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. However, the Supreme Court has instructed that courts should liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

    **B.**    **Allegations of Complaint**

According to Plaintiff, Defendant Carter County Jail Captain Matt Patterson placed Plaintiff on administrative protective custody/segregation ("administrative segregation") [Doc. 2 at 3-4]. Plaintiff alleges that he "never ask[ed for] or signed up" for administrative segregation and that he has "done nothing wrong to be denied of the things . . . every other inmate" receives [*Id.*]. In administrative segregation, Plaintiff is "on camera 24/7," cannot "hear or see the tv," is "denied religion program[]s," is denied "inmate outreach programs," is denied "a trustee job," is denied "full axes [access] to law books," and is "made to take rec[reation] time alone" [*Id*. at 4]. Plaintiff contends that on April 24 and 25, 2023, Captain Patterson gave Plaintiff recreation time with other inmates while the Governor was conducting a walk-through of the facility to make it appear that "everyone was being treated in the same manner" as Plaintiff [*Id*.]. Plaintiff alleges that Captain Patterson's actions violate Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment and are "crude an[d] libelous[,]" and a "defamation of [Plaintiff] character" [*Id*.]. Plaintiff also states that administrative segregation has caused him to

3

experience Post-Traumatic Stress Disorder and emotional stress, resulting in Plaintiff seeking mental health services twice [*Id.*].

On May 22, 2023, sometime between 10:00 a.m. and 12:00 p.m., Plaintiff was on recreation time when Correctional Officer ("CO") Rymer opened the cell door of inmate Bobby Lee Porter, Jr. [*Id.*]. CO Rymer was "not suppose[d] to [open Porter's cell door] for my [Plaintiff's] protection" [*Id.*]. Porter attacked Plaintiff and stated he was going to knock Plaintiff out and have sex with him [*Id.*]. Porter pulled his pants down and "tried to mount" Plaintiff [*Id.*]. Plaintiff maintains that he experienced sexual abuse as a child, and that this incident triggered nightmares and flashbacks that have made him afraid to leave his cell [*Id.*]. He further contends that Porter is still housed in the same block as Plaintiff, and that Captain Patterson has refused to move Plaintiff or allow him to press charges against Porter [*Id.*]. Plaintiff filed this suit seeking $1 million in damages and requesting to be "moved to a different jail" [*Id.* at 5-6].

### C.     Analysis

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a "person" acting "under color of" state law deprived him of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The Court addresses Plaintiff's claims related to (1) Administrative Segregation, (2) Failure to Protect, and (3) Initiation of Charges in turn.

#### 1.     Administrative Segregation

##### a.     Eighth Amendment Cruel and Unusual Punishment

Plaintiff maintains that his placement in administrative segregation violates the Eighth Amendment's prohibition against cruel and unusual punishments [*See* Doc. 2 at 4]. The Eighth Amendment prohibits "cruel and unusual punishment." U.S. Const. amend. VIII. But "the

4

Constitution does not mandate comfortable prisons[.]" *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). And "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[T]he ban on cruel and unusual punishments prohibits the 'unnecessary and wonton infliction of pain' on prisoners." *Johnson v. Sootsman*, --- F.4th ---, 2023 WL 5274516, *4 (6th Cir. Aug. 16, 2023) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). This has both an objective and subjective component. *Id.* "Objectively, harm to a prisoner must rise to a sufficiently serious level because the Eighth Amendment prohibits only 'cruel and unusual' deprivations, not just uncomfortable or 'even harsh' ones." *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Subjectively, harm to a prisoner must result from a prison official's sufficiently volitional actions because the Eighth Amendment bars only willful conduct that 'inflict[s]' 'punishment,' not accidental conduct that causes injury. *Id.* (quoting *Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021)). Only conditions of confinement that involve "the wanton and unnecessary infliction of pain," that are "grossly disproportionate to the severity of the crime," or that result in the denial of the "minimal civilized measure of life's necessities" violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346-47.

Here, Plaintiff's Eighth Amendment claim based on administrative segregation fails. Mere "placement in segregation" will not sustain an Eighth Amendment claim because it is "a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society." *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (citing *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Something more is required, for example, an allegation that administrative segregation deprived Plaintiff of some basic human need or caused a physical injury. *See, e.g.*, *Rhodes*, 452 U.S. at 347-48; *see also Harden-Bey*, 524 F.3d at 795. Plaintiff alleged that he receives fewer privileges than inmates in general population, but he did not allege that he was denied any basic human need. In fact, Plaintiff received recreation time and

5

has access to mental health care despite his placement in administrative segregation [*See* Doc. 2 at 4]. Therefore, the Court **DISMISSES** Plaintiff's claim.

### b. Fourteenth Amendment Due Process

Liberally construing Plaintiff's Complaint, the Court also considers whether Plaintiff's allegations state a cognizable due process claim. "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To assess "whether segregation of an inmate from the general prison population involves the deprivation of a state-created liberty interest protected by the due process clause," the Court must "determine if the segregation imposes an 'atypical and significant' hardship on the inmate 'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)).

Courts consider "the nature of the more-restrictive confinement *and* its duration in determining whether it imposes an atypical and significant hardship." *See Harden-Bey v. Rutter*, 524 F.3d 789, 793 (6th Cir. 2008) (emphasis in original) (internal quotation marks omitted) (collecting cases). The use of administrative segregation alone has "repeatedly been held not to involve an 'atypical and significant' hardship implicating a protected liberty interest." *Jones*, 155 F.3d at 812 (citation omitted); *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (concluding that an inmate "could not after *Sandin*, argue that placement in administrative segregation is an 'atypical and significant hardship'"); *Rimmer-Bey v. Brown*, 62 F.3d 789, 791 (6th Cir. 1995) (concluding that mere "placement in administrative segregation was not an atypical and significant hardship, as intended by *Sandin*").

6

Plaintiff has no general liberty interest in his housing placement or his security classification. *See, e.g., Montanye v. Haymes*, 427 U.S. 236, 242 (1976). And he has not alleged facts sufficient for the Court to infer that the nature and circumstances of Plaintiff's administrative segregation are such that they present "an atypical and significant hardship." *See Harden-Bey*, 534 F.3d at 793. Accordingly, the Court **DISMISSES** this claim.

### c. Prison Privileges

Plaintiff contends that while in administrative segregation, he was denied various prison privileges that other inmates enjoy, including access to television, outreach programs, and a trustee job [Doc. 2 at 4]. But Plaintiff has no constitutional right to these privileges or programs. *See, e.g., Martin v. O'Brien*, 207 F. App'x 587, 590 (6th Cir. 2006) (holding "a prisoner does not have a constitutional right to prison employment or a particular prison job"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) ("Prisoners have no constitutional right to rehabilitation, education, or jobs."); *Vick v. Core Civic*, 329 F. Supp. 3d 426, 451 (M.D. Tenn. 2018) ("Simply stated, there is no constitutional right to television while incarcerated." (citing *Rawls v. Sundquist*, 929 F.Supp. 284, 288-29 (M.D. Tenn. 1996))). Thus, the Court **DISMISSES** this claim.

### d. First Amendment Access to Religious Programs

Plaintiff maintains that he was "denied religion program[]s" due to his administrative segregation [Doc. 2 at 4]. The First Amendment right to free exercise is fundamental, and inmates maintain a right to free exercise. But that right may be restricted in certain limited ways. *See Koger v. Mohr*, 964 F.3d 532, 542-43 (6th Cir. 2020). Here, Plaintiff has presented only a conclusory allegation that he was denied religious programs. His Complaint lacks any facts that would allow the Court to plausibly infer that his constitutional right to exercise his faith has been

7

violated. This is insufficient to state a claim. *See Iqbal*, 556 U.S. at 681. Therefore, the Court **DISMISSES** this claim.

### e. Limited Access to Legal Resources

Next, Plaintiff alleges that he has been denied full access to legal resources while in administrative segregation [Doc. 2 at 4]. However, detention facilities may "reasonably limit the times, places, and manner in which inmates may engage in legal research and preparation of leg[al] papers so long as the regulations do not frustrate access to the courts." *Walker v. Mintzes*, 771 F.2d 920, 931-32 (6th Cir.1985). Plaintiff has not alleged that he has suffered some legal harm because of the allegedly restricted access, and therefore, this allegation fails to state a claim upon which relief may be granted. S*ee Lewis v. Casey*, 518 U.S. 343, 354 (1996) (holding inmate claiming lack of access must demonstrate his prison officials impeded non-frivolous civil rights or criminal action); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation."). Accordingly, the Court **DISMISSES** this claim.

### f. Fourteenth Amendment Equal Protection

Plaintiff alleges that other inmates at the Carter County Jail receive privileges that are denied to him while in administrative segregation [Doc. 2 at 4]. Therefore, liberally construing the Complaint, the Court considers whether the alleged disparity violates the Fourteenth Amendment's Equal Protection Clause. "To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,*

8

*Mich*., 470 F.3d 286, 299 (6th Cir. 2006)). Plaintiff's Complaint does not include allegations that would permit the Court to infer that he was treated differently "as compared to similarly situated persons" or that such treatment "burdens a fundamental right, targets a suspect class, or has no rational basis." *See id.* Accordingly, the Court **DISMISSES** this claim.

### g. Libel and Defamation

Plaintiff contends that his placement in administrative segregation is libelous and defamatory [Doc. 2 at 4]. But allegations of defamation and libel alone do not state a Section 1983 claim, because harm to one's reputation alone does not implicate a protected "liberty" or "property" interest under due process principles. *See Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) ("Absent a further injury, such as loss of a government job or loss of a legal right or status, defamation, by itself, does not constitute a remediable constitutional claim."). Accordingly, the Court **DISMISSES** Plaintiff's claims for defamation and libel under Section 1983.[1]

### h. Surveillance

Plaintiff complains that he is under constant video surveillance while in administrative segregation [Doc. 2 at 4]. Liberally construing Plaintiff's Complaint, the Court construes this as an allegation that the constant surveillance is an unreasonable "search" in violation of Plaintiff's Fourth Amendment rights as incorporated by the Fourteenth Amendment. *See Kent v. Johnson*,

---

[1] To the extent that Plaintiff sought to assert a claim against Defendant for defamation and libel under state law, the Complaint also fails to state a claim. Libel is written defamation. *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc*., 876 S.W.2d 818, 820 (Tenn. 1994). To state a claim for defamation, Plaintiff must allege that a party (1) published a statement; (2) with knowledge that the statement was false and defaming to the other; or (3) with reckless regard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. *See Sullivan v. Baptist Mem'l Hosp*., 995 S.W.2d 569, 571 (Tenn. 1999) (citation and quotation marks omitted). Here, there are no allegations that Defendant published any statement or that any such statement was false or defaming, or made with reckless regard or negligently.

9

821 F.2d 1220, 1226 (6th Cir. 1987). Traditionally, prisoners maintain no right to privacy in their cells. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security."). However, the Sixth Circuit has recognized an inmate's limited right to bodily privacy under the Fourth Amendment in circumstances whether the prisoner is forced to expose himself to a member of the opposite sex. *See, e.g., Cornwell v. Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (observing right to privacy claim under Fourth Amendment where male inmate forced to endure outdoor strip search in presence of female correctional officers); *Mills v. City of Barbourville*, 389 F.3d 568, 579 (6th Cir. 2004) (recognizing that "a prison policy forcing prisoners. . . to be exposed to regular surveillance by officers of the opposite sex while naked—for example while in the shower or using a toilet in a cell—would provide the basis of a claim on which relief could be granted"). Plaintiff has not alleged sufficient facts to allow a plausible inference that his right to privacy has been violated. Therefore, the Court **DISMISSES** this claim.

    **2.**   **Eighth Amendment Failure to Protect**

Plaintiff claims that CO Rymer[2] failed to protect him from an attack by Porter when CO Rymer opened Porter's cell door while Plaintiff was on recreation time [Doc. 2 at 4]. He further alleges that Defendant Patterson refuses to move him to another jail despite Plaintiff's fear following the attack [*Id*.]. Because Plaintiff is in prison, his claim arises under the Eighth Amendment.

---

[2] CO Rymer is not a Defendant in this action.

Case 2:23-cv-00080-KAC-CRW  Document 4  Filed 09/08/23  Page 10 of 13  PageID #: 32

The Eighth Amendment's prohibition on "cruel and unusual punishment" "places duties" on prison officials. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Those duties require officials to "take reasonable measures to guarantee the safety of" inmates. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 527-27 (1984)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. "For a failure-to-protect claim to lie against a prison official, the plaintiff must show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and fail[ed] to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and quotations omitted) (alteration in original).

Plaintiff's claim fails on both elements. **First**, the allegations in the Complaint do not permit the Court to infer that Plaintiff was, or is, incarcerated under conditions posing a substantial risk of serious harm. *See Reedy*, 988 F.3d at 912. There is no evidence that inmate Porter posed a particular danger prior to the alleged assault, or that his current incarceration in the same cell block as Plaintiff poses a particular danger. Nor is there evidence that Plaintiff was, or is, "particularly vulnerable to assault." *See Schoonover v. Rogers*, 2022 WL 12258998, *6 (6th Cir. Oct. 21, 2022). **Second**, there are no facts that would permit the Court to infer that Defendant, or CO Rymer for that matter, was aware of the risk, either before or after the attack, and failed to take reasonable measures to address it. *See Reedy*, 988 F.3d at 912. It is well settled that the placement of prisoners is a matter generally left to the discretion of state officials, and a prisoner has no constitutional right or protected liberty interest to be housed in any particular facility or unit. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). As

such, Plaintiff's allegations fail to "nudge[] [this claim] across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. Moreover, Plaintiff's allegation that CO Rymer, presumably under the supervision of Defendant, violated Carter County Jail policies fails to assert a Section 1983 claim. *See Helphenstine v. Lewis Cnty.*, 60 F.4th 305, 322 (6th Cir. 2023) ("Alone, the failure to follow an internal policy does not give rise to a deliberate indifference claim" (citation omitted)). Therefore, the Court **DISMISSES** this claim.

### 3. Initiation of Charges

Finally, Plaintiff complains that Defendant would not allow Plaintiff to press charges against Porter [Doc. 2 at 4]. The decision regarding whether to initiate a criminal prosecution rests with a prosecutor, not the Court. *See, e.g., Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). And a private citizen has no protected legal interest in the investigation or prosecution of a crime. *See Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996) (noting the absence of law allowing a Section 1983 action to force the state to prosecute). Therefore, Plaintiff has no right to demand that charges be brought against Porter, and the Court **DISMISSES** this claim.

## III. CONCLUSION

As set forth above:

1. The Court **GRANTED** Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1];

2. The Court **ASSESSED** Plaintiff the civil filing fee of $350.00;

3. The Court **DIRECTED** the custodian of Plaintiff's inmate trust account to submit the filing fee to the Clerk in the manner set for above;

4. The Court **DIRECTED** the Clerk to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

12

5. Even liberally construing the Complaint in favor of Plaintiff, it fails to state a claim upon which relief may be granted. Accordingly, the Court **DISMISSED** this action under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Fed. R. App. P. 24. Should Plaintiff file a notice of appeal, he is **DENIED** leave to appeal *in forma pauperis*. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24. An appropriate judgment shall enter.

**SO ORDERED.**

**ENTER:**   s/ Katherine A. Crytzer
KATHERINE A. CRYTZER
United States District Judge